UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES MORRIS,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>WARDEN,<br><br>　　　　　　Respondent. | CAUSE NO.: 3:19-CV-1068-JD-MGG |

OPINION AND ORDER

Charles Morris, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Plainfield Correctional Facility (IYC 19-04-0155), in which he was found guilty of attempted trafficking/conspiracy to commit trafficking in violation of Indiana Department of Correction ("IDOC") disciplinary offenses A-111 and A-1113. (ECF 2.) Among other sanctions, he lost 180 days of earned-timed credits. (*Id.*)

The charges were initiated on April 12, 2019, when IDOC Investigator P. Prulhiere wrote a conduct report stating that, following an internal investigation initiated on March 20, 2019, the Hendricks County Prosecutor had charged Mr. Morris with dealing in a controlled substance and trafficking a controlled substance. (ECF 11-1.) Investigator Prulhiere also prepared a report of investigation stating as follows:

> On March 20, 2019, I Investigator P. Prulhiere, opened a criminal investigation of trafficking a controlled substance into the Plainfield Correctional Facility based on the following information regarding Offender Charles Morris 963250:

> On March 20, 2019, at about 3:40 PM, Custody Staff at the Plainfield Correctional Facility retrieved Suboxone Strips (RX Marking N12 six in quantity and RX Marking N8 eleven in quantity) from Offender Charles Morris DOC #963250. Suboxone is a schedule III substance in IC 35-48-2-8(e)-(7) Buprenorphine
>
> On March 20, 2019, at about 3:10 pm, Plainfield Correctional Facility received information from investigators that Offender Charles Morris 963250, aka "C-Bo" had received a package from Correctional Officer Heather Groover within [the] last 15 to 20 minutes of receiving the information. This information initiated an immediate investigation. The information described Offender Justin Taylor 127875, aka "FATBOY." According the caller, Offender Justin Taylor DOC #127875 received the package from Officer Groover to relay it to Offender Morris.
>
> At about 3:30 PM, an emergency target search team was implemented and sent to Housing Unit West Dorm to L Unit cell 28, the cell of Offender Morris. Custody Staff completed strip searches and property searches of both offenders. At about 3:40 PM Sergeant T. Meyer did retrieve a package from the property box of Offender Morris which contained 6 N12 suboxone strips and 11 N8 suboxone strips. The combined weight of these items was approximately 1 gram. The condition of the suboxone found in the property of Offender Morris on March 20, 2019 appeared to be whole or uncut. The items were wrapped in a state that is commonly found in incidents of trafficking. The remainder of this investigation is contained in the official confidential case file, 19-IYC-0036.

(ECF 11-2) (errors in original). A confidential investigation report was also prepared and submitted. (ECF 12.)

On June 6, 2019, Mr. Morris was formally notified of the charge and given a copy of the conduct report and the report of investigation. (ECF 2-1; ECF 11-1; ECF 11-2.) He pled not guilty and declined the assistance of a lay advocate. (ECF 2-1.) He requested a witness statement from inmate Justin Taylor to state that "[h]e never handed me a package." (*Id.*) He also requested that Investigator Prulhiere answer the following question: "Did you say you saw Offender Morris, Charles picking up trash that day at

2

that time?" (*Id.*) He further requested video evidence "that shows Taylor giving me a package" and video evidence from "3:10-3:30 to also show I was not in the dorm." (*Id.*) In response to Mr. Morris's question, Investigator Prulhiere stated: "You will have to argue any questions of me using the legal process VIA the Hendricks County Court." (ECF 11-8.) The hearing officer determined that Mr. Morris was not entitled to the other witness statement or the video evidence, because this information was contained in the confidential case file. (ECF 11-7.)

On June 17, 2019, a hearing was held on the charge. (ECF 11-7.) Mr. Morris stated as follows in his defense: "I never did any trafficking. You can't get me on trafficking if I never been caught consp. any kind of items [sic]. I'm guilty of possession of suboxone." (*Id.*) Based on staff reports, Mr. Morris's statement, statement from witnesses, and information in the confidential case file, the hearing officer found Mr. Morris guilty. (*Id.*) Among other sanctions, he lost 180 days of earned-time credits. (*Id.*) His administrative appeals were denied. (ECF 11-9; ECF 11-10.)

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To

satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Morris raises two claims in his petition: (1) the disciplinary charge should have been dismissed because a criminal charge brought against him based on the same conduct was dismissed; (2) he was denied the right to fair hearing because the hearing officer denied him evidence. (ECF 2 at 2.) The respondent argues that these claims are without merit.[1] (ECF 11.)

Mr. Morris first argues that the disciplinary charge should have been dismissed because the criminal trafficking charge against him was dismissed by the Hendricks County Prosecutor. (ECF 2 at 2.) He attaches an abstract of judgment showing that he was charged with three counts in the criminal case: dealing in a controlled substance; trafficking a controlled substance; and unlawful possession of a controlled substance. (ECF 2-1 at 5.) The abstract reflects that on August 13, 2019—two months after the disciplinary hearing—he pled guilty to unlawful possession in exchange for dismissal of the other two counts. (*Id.* at 6.)

Simply because the criminal charge was dismissed does not mean Mr. Morris could not be punished for a disciplinary offense based on the same conduct. Double Jeopardy principles do not apply in the prison disciplinary context. *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996). Moreover, the criminal charge was subject to a

---

[1] By operation of N.D. IND. L.R. 47-2, Mr. Morris was required to file his traverse by May 22, 2020. None was received by that deadline. Out of an abundance of caution, the court issued an order resetting the deadline to August 31, 2020. (ECF 20.) That deadline has passed and no traverse has been received.

4

substantially higher burden of proof: the prosecution was required to prove that Mr. Morris engaged in trafficking beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 316 (1979), whereas a guilty finding in a disciplinary case only needs to be supported by "some evidence." *Hill*, 472 U.S. at 455; *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (observing that guilt need not be proven beyond a reasonable doubt in the prison disciplinary context). In short, the fact that Mr. Morris was able to negotiate a plea in the criminal case resulting in dismissal of some of the charges did not prevent the prison from punishing him for trafficking.

To the extent Mr. Morris is challenging the sufficiency of the evidence supporting the guilty finding, there only needs to be "some evidence" of guilt to satisfy due process. *Hill*, 472 U.S. at 455. As the Seventh Circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. . . . It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

Mr. Morris was found guilty of violating A-111 and A-113. Offense A-111 prohibits "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense." (ECF 11-11 at 2.) Offense A-113, trafficking, prohibits "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility

5

warden or designee." (*Id.*) Offense A-113 further provides that "[a]n offender engaging in behavior violating this provision or the Indiana Code criminal provisions IC 35-44.1-3-5 or IC 35-44.-3-6 commits the act of trafficking regardless of whether the offender is criminal arrested, prosecuted, or convicted." (*Id.*)

The confidential investigation report, the report of investigation, and the conduct report provide some evidence that Mr. Morris conspired to traffic drugs in the facility. Contrary to his suggestion, the prison did not need video evidence showing the package of suboxone being physically handed to him in order to find him guilty. There was other evidence showing that he was involved in a plan to bring drugs into the facility to sell to other inmates, and drugs were found in his property box. Although he protests that he is not guilty of trafficking, it is not the province of this court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. The court finds the evidence constitutionally sufficient.

Mr. Morris next claims that he was denied evidence. (ECF 2 at 2.) The record reflects that at screening, he requested that Investigator Prulhiere answer a question about whether he had seen Mr. Morris picking up trash outside the facility around the time of this incident. (ECF 2-1.) Investigator Prulhiere essentially declined to provide an answer due to the pending criminal case. (ECF 11-8.) However, Investigator Prulhiere provided a detailed account of what his investigation revealed in the report of investigation, and Mr. Morris had no due process right to confront or cross-examine him. *Wolff*, 418 U.S. at 567–68; *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Additionally, whether Investigator Prulhiere personally saw Mr. Morris picking up

trash outside the facility on the date in question would not directly undercut the evidence that Officer Groover brought a package into the facility containing suboxone that ended up in Mr. Morris's property box. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992).

Mr. Morris also requested a witness statement from inmate Taylor to state that he did not give Mr. Morris any package. (ECF 2-1.) The hearing officer declined to require a witness statement from Taylor, because he had already been interviewed as part of the confidential investigation and denied knowing anything about the drugs or being involved in a hand-off of a package.[2] (*See* ECF 16.) The hearing officer considered Taylor's statement, along with the rest of the confidential report, in reaching his decision. Another statement from Taylor that he didn't know anything about the package of drugs would have been repetitive. *See Scruggs v. Jordan*, 485 F.3d 934, 939–40 (7th Cir. 2007). Additionally, this evidence would not have directly undercut the evidence of guilt, because the prison was not required to prove that it was *Taylor* who handed Mr. Morris the drugs. The conduct report stated only that Taylor took the package from Officer Groover in order to relay it to Mr. Morris; there may well have been other inmates involved in actually passing the package to Mr. Morris. There is ample evidence in the record that Officer Groover brought drugs into the facility that were meant for Mr. Morris, and prison staff found the drugs in Mr. Morris's evidence locker.

---

[2] Although this information is contained in a disc submitted under seal by the respondent, details of Taylor's statement are included in the return. (*See* ECF 11 at 12.)

To the extent Mr. Morris is arguing that the confidential investigation report should have been turned over to him, he had a right to request evidence in his defense, but not necessarily to personally review the evidence. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* The court has reviewed the confidential investigation report and the two confidential discs, and concludes that they contain a variety of sensitive materials that, if disclosed to Mr. Morris, could jeopardize institutional safety and reveal investigative techniques. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Nor is there anything in these records that would have been exculpatory. These records were appropriately kept confidential.

The screening report reflects that Mr. Morris also requested video evidence. (ECF 2-1.) The confidential investigation report contained video evidence of the relevant time period—approximately 2:46 p.m. to 3:04 p.m. One camera showed Mr. Morris walking outside the prison collecting trash, and another camera showed inmates inside the facility gathered near a window. The hearing officer declined to turn this evidence over to Mr. Morris, but considered it along with the rest of the confidential report. The prison had ample reason to keep the video confidential. *See Jones*, 637 F.3d at 848-49; *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003). Additionally, from this court's review, the video evidence was inculpatory rather than exculpatory.

Mr. Morris also wanted video evidence from 3:10 to 3:30 p.m. to show that he was "not in the dorm," which does not appear to have been included in the confidential

8

investigation report. However, such evidence would have been irrelevant, because prison staff were notified at 3:10 p.m. that the drugs had already been passed off from Officer Groover. (ECF 11-2.) Mr. Morris's exact whereabouts while prison staff were investigating the incident were not relevant to the charge. Mr. Morris does not clearly explain why he believes evidence about his whereabouts from 3:10 p.m. to 3:30 p.m. would have exonerated him, but to the extent he is attempting to argue that he did not put the drugs in his property box, he admitted in the criminal case that he was in possession of the drugs found in his cell. (*See* ECF 2-1.) He cannot raise any argument in this case that would necessarily imply the invalidity of his criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Additionally, he made the same admission at the disciplinary hearing, admitting that he was "guilty of possession of suboxone." (ECF 11-7.) Notably, the record shows that Mr. Morris was in his cell at 3:30 p.m. when prison staff arrived there to conduct a search. (ECF 11-2.) Based on the record, he has not established a due process violation.

For these reasons, the court DENIES the habeas corpus petition (ECF 2), and DIRECTS the clerk to enter judgment in this case.

SO ORDERED on September 8, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

9